KING, Circuit Judge,
concurring in the judgment:
Although I commend my good friend Judge Michael for his carefully crafted opinion in this case, I write separately to explain my concurrence in the judgment. His opinion for the panel majority reverses the district court’s denial of the plaintiffs’ request to alter or amend its judgment dismissing their first amended complaint (the “FAC”). As a result, the majority today vacates the court’s Rule 12(b)(6) dismissal for failure to plead scienter, and remands so that the plaintiffs can amend the FAC. In my view, the FAC sufficiently alleges scienter, and I would reverse the district court on that basis. Although I would remand for further proceedings on the FAC, I concur in the judgment.
I.
A.
The FAC alleges two claims against the defendants: first, a violation of § 10(b) of the Securities Exchange Act of 1934 (the “Act”), 15 U.S.C. § 78j(b), as well as SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 (the “ § 10(b) claim”); and second, a violation *197 of § 20(a) of the Act, 15 U.S.C. § 78t(a) (the “ § 20(a) claim”). To be legally sufficient, a § 10(b) claim must allege, inter alia, scienter. See Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 128 S.Ct. 761, 768, 169 L.Ed.2d 627 (2008). As the panel majority explains, the resolution of this appeal turns on the scienter element.*
Significantly, the Private Securities Litigation Reform Act of 1995 (the “PSLRA”) “impose[d] heightened pleading requirements” for scienter in § 10(b) actions. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 81, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006). Pursuant thereto, a plaintiff is obliged to “state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.” 15 U.S.C. § 78u-4(b)(2). The Supreme Court has further refined that standard, requiring a § 10(b) claim to allege facts giving rise to a “cogent and compelling” inference of scienter that is “strong in light of other explanations.” Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). Like the district court, the majority concludes that, under Tellabs, the FAC failed to sufficiently allege scienter in the § 10(b) claim, rendering both of the plaintiffs’ claims legally insufficient. As explained below, I disagree.
B.
1.
In evaluating whether a § 10(b) claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to sufficiently plead scienter, we proceed according to the following analysis: first, as with any Rule 12(b)(6) motion, we accept the factual allegations of the complaint as true; second, we assess the complaint “in its entirety,” including any exhibits incorporated by reference; and third, we take into account any “plausible opposing inferences.” Tellabs, 551 U.S. at 322-23, 127 S.Ct. 2499; see also Pub. Employees’ Ret. Ass’n v. Deloitte & Touche LLP, 551 F.3d 305, 312 (4th Cir.2009). We are further obliged, in the words of the Supreme Court, to “assess all the allegations holistically,” which requires us to “take[ ] collectively” the allegations in the complaint and refrain from “scrutinizing] each allegation in isolation.” Tellabs, 551 U.S. at 326, 127 S.Ct. 2499.
After carefully weighing the plausible inferences that flow from the allegations of the § 10(b) claim, we may only reverse the dismissal thereof if “a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inferences one could draw from the facts alleged.” Tellabs, 551 U.S. at 324, 127 S.Ct. 2499. The inference that the defendants acted with scienter “need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences.” Id. (internal quotation marks omitted). Rather, an inference of scienter need only be “cogent and compelling, thus strong in light of other explanations.” Id. In my view, a reasonable person would readily conclude that the allegations of the § 10(b) claim, viewed holistically, create an inference of *198 scienter at least as compelling as any opposing inferences — -including the possibility that the defendants were “merely negligent.” Ante at 187.
2.
As the Supreme Court has explained, “scienter” is the “intention ‘to deceive, manipulate, or defraud.’ ” Tellabs, 551 U.S. at 313, 127 S.Ct. 2499 (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 & n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). Importantly, scienter may “be established by a showing of recklessness.” Ottmann v. Hanger Orthopedic Group, Inc., 353 F.3d 338, 343 (4th Cir.2003). In the context of a § 10(b) claim, we have defined recklessness as behavior that is
so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.
Id. (internal quotation marks omitted); see also Deloitte & Touche, 551 F.3d at 313.
The FAC paints a clear picture of deceit, manipulation, fraudulent behavior, and recklessness, by alleging, inter alia, the following:
• “[T]he defendants employed devices, schemes and artifices to defraud,” and engaged in practices that “operated as a fraud and deceit upon the purchasers of BearingPoint’s securities,” J.A. 396 ¶ 147 (emphasis added);
• “The accounting improprieties were not the result of simple malfeasance or negligence” but “of, at a minimum, gross recklessness,” id. at 291 ¶ 6 (emphasis added);
• By placing employees with “no competence or experience” into management positions, Bearing-Point’s conduct, “at a minimum, constitute^] gross recklessness,” id. at 294 ¶ 8 (emphasis added);
• BearingPoint’s “utter lack of accounting controls also emboldened other acts of deliberate fraud,” including, inter alia, false billings, id. at 297 ¶ 14 (emphasis added); and
• “At least fifteen former senior managers ... were terminated as a result of the accounting fraud,” id. at 297 ¶ 15 (emphasis added).
Under the heading “Scienter Allegations,” the FAC further particularizes its allegations of fraud, manipulation, deceit, and recklessness, inter alia, as follows:
• BearingPoint made substantial restatements and, due to a massive write-down in goodwill, “went from initially reporting a profit in 2004 to reporting a half-billion [dollar ] loss, a staggering financial reversal,” J.A. 307 ¶ 40-41;
• “[T]he defendants knew that the Company’s systems of internal control were essentially nonexistent or, at a minimum, dysfunctional,” such that financial reports were neither accurate nor reliable, id. at 307 ¶ 42;
• BearingPoint officials “acknowledged pervasive and severe defects in its internal accounting control systems,” due to inadequate communication, training, and management controls, id. at 310 ¶ 45;
• An investigation confirmed that BearingPoint “was plagued with corrupt management and lax internal controls,” which provided “a perfect springboard” for false financial reporting, id. at 310 ¶ 46;
• The defendants “knew, or recklessly disregarded,” that deficiencies in internal controls would lead to materially misstated financial reports, because *199 OneGlobe problems “permeated [its] entire business,” id. at 311-12 ¶¶ 53;
• An improper “tone at the top” regarding financial reporting matters cultivated a “corrupt culture” at Bearing-Point, id. at 317 ¶ 67; and
• Consultants “discovered gross accounting abuses,” with one consultant reporting that “every single contract that he reviewed ... w[as] [materially] incorrect with regard to revenue recognition,” id. at 322 ¶ 78.
Considering the allegations of the FAC holistically, a compelling inference emerges: the defendants acted fraudulently, or at least recklessly. Viewed in the proper light, the FAC demonstrates that Bearing-Point was plagued with corrupt management and lax internal controls, which allowed for the cultivation of fraudulent and reckless conduct. The FAC alleges that senior management perpetrated fraud by placing “tremendous pressure” on its employees to attain certain reporting goals, and it “actively encouraged” them to falsify data to achieve these goals. J.A. 310 ¶ 47. More specifically, BearingPoint senior managers “directed the falsification of utilization rates [a key metric used by investors in assessing growth] so that internal reporting goals could be met,” which was readily accomplished by overriding BearingPoint’s “weak (and largely non-functioning) internal controls.” Id. at 311 ¶ 49. These allegations are bolstered by specific examples of fraudulent misrepresentations in BearingPoint’s monthly, quarterly, and annual reports; the termination or resignation of several management-level officials, including former CEO Blazer and former CFO Falcone, “as a result of the accounting fraud,” id. at 297 ¶ 15; and an investigation of BearingPoint by the SEC. Furthermore, despite BearingPoint’s specialization in systems integration, its own accounting system integration was a spectacular failure. Viewed holistically, the inferences of fraud and recklessness that flow from the FAC are compelling.
Furthermore, as the Supreme Court recognized in Tellabs, “motive can be a relevant consideration” with respect to the scienter inquiry, and “personal financial gain may weigh heavily in favor of a scienter inference,” depending on “the entirety of the complaint.” 551 U.S. at 325, 127 S.Ct. 2499. The FAC specified the motive for the BearingPoint officials’ conduct, alleging that, during the relevant period, the company “complete[d] substantial private offerings of BearingPoint securities of at least $450 million.” J.A. 323 ¶ 79. Indeed, “[h]ad the fraud alleged herein been timely and fully disclosed!,] BearingPoint would not have been able to complete these offerings.” Id. Although “motivations to raise capital ... are common to every company,” Cozzarelli v. Inspire Pharms., Inc., 549 F.3d 618, 627 (4th Cir.2008), in our holistic analysis of the FAC, the motive of personal financial gain renders the inference of scienter even more compelling.
C.
1.
The majority predicates its ruling, in part, on its view that the FAC fails to create a sufficiently compelling inference that the defendants knew or must have been aware of the misstatements and reporting inaccuracies. For example, the majority observes that the inferential weight attributable to the 2004 reporting errors can only support an allegation of scienter “in the context of BearingPoint’s financial position,” implying that its revenue stream was so substantial that its officials neither knew nor were aware of the misstatements of income. Ante at 184. Put simply, however, I believe that BearingPoint’s reporting discrepancies deserve *200 greater weight than my good colleagues allow. BearingPoint initially reported net income of around $28.7 million for the first three quarters of 2004, when in fact it had experienced a net loss during those quarters of almost $85 million, as disclosed by its April 20, 2005 Form 8-K restatement. Even measured against BearingPoint’s revenues of more than $800 million, an overstatement of $63.7 million — specifically when it turns profits into losses — is hardly a trivial sum. Such a discrepancy creates a compelling inference that BearingPoint officials knew or must have been aware of the alleged reporting errors. Cf. Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir.2000) (concluding that magnitude of write-offs supported “strong inference of recklessness,” and therefore scienter).
Notwithstanding the significant discrepancies of the restatements, the FAC yet adequately alleges that BearingPoint officials, including Blazer and Falcone, knew or must have been aware of the inaccurate financial reporting and the sheer enormity of the company’s internal failures. See, e.g., J.A. 396 ¶ 147 (indicating that “[e]ach of the defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and each of them engaged in acts, practices, and a course of conduct ... to assure investors of BearingPoint’s value and performance and continued substantial growth” (emphasis added)); id. at 313 ¶ 56 (alleging that errors appeared in Bearing-Point’s monthly, quarterly, and annual reports, which were “reviewed by [Blazer and Falcone]”); id. at 314 ¶ 58 (indicating that Blazer had spoken to a former executive vice president and thus “was well aware of the material accounting errors”); id. at 317 ¶ 66 (alleging that a former BearingPoint managing director indicated that OneGlobe problems were “openly discussed” among management); id. at 315 ¶ 59 (explaining that “[e]ach of the defendants had ... contemporaneous knowledge or recklessly disregarded, that the goodwill associated with [BearingPoint’s] acquisitions were materially misstated” (emphasis added)).
Indeed, I am unable to conclude that the absence of a specific timeline or similar allegations renders the inference of scienter any less compelling than other possible inferences. See Institutional Investors Group v. Avaya, Inc., 564 F.3d 242, 269 (3d Cir.2009) (concluding that Tellabs analysis “will ultimately rest not on the presence or absence of certain types of allegations but on practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is at least as likely as not that defendants acted with scienter”); see also South Ferry LP v. Killinger, 542 F.3d 776, 784 (9th Cir.2008) (“Tellabs counsels us to consider the totality of the circumstances, rather than to develop separately rules of thumb for each type of scienter allegation.”).
2.
Finally, the defendants’ state of mind with respect to the lack of appropriate internal controls bolsters the § 10(b) claim’s allegation of recklessness resulting in a significant misstatement of financial status. See Tellabs, 551 U.S. at 319 n. 3, 127 S.Ct. 2499 (“Every Court of Appeals that has considered the issue has held that a plaintiff may meet the scienter requirement by showing that the defendant acted intentionally or recklessly .... ” (emphasis added)). In this case, the plaintiffs have alleged substantially more than internal mismanagement or “merely that [the defendants’] statements turned out to be wrong.” Avaya, 564 F.3d at 269. Indeed, the § 10(b) claim “proffer[s] an array of circumstantial evidence [that gives] rise to a strong inference” that BearingPoint’s *201 public misstatements and internal conduct were fraudulent, or were “at least reckless, which is enough to survive a motion to dismiss under the PSLRA.” Id.; cf. Miss. Pub. Emples. Ret. Sys. v. Boston Sci. Corp., 523 F.3d 75, 87 (1st Cir.2008) (“[T]he fact that the defendants published statements when they knew facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter.” (internal quotation marks omitted)).
II.
The PSLRA was designed to curb perceived abuses of the § 10(b) private action — “nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and manipulation by class action lawyers.” Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 81, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006) (internal quotation marks omitted). Simply put, however, the FAC was not in any context a nuisance filing, and this case is not characterized by any of the abuses enumerated above. In these circumstances, I would reverse the district court’s Rule 12(b)(6) dismissal and remand for further proceedings on the FAC. That said, I concur in the judgment.

 Section 10(b) of the Act and SEC Rule 10b-5 together serve "to protect the integrity of the market in securities and prohibit fraud in connection with the purchase or sale of a security." Cozzarelli v. Inspire Pharms., Inc., 549 F.3d 618, 623 (4th Cir.2008). Section 20(a) imposes liability on a person who “controls any person liable under any provision of this chapter.” 15 U.S.C. § 78t(a). Because a plaintiff must successfully allege a predicate violation of the Act in order to proceed under § 20(a), failure of the scienter allegations of the § 10(b) claim is fatal to both claims of the FAC.